## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| Aquilino Collazo,<br><br>                    Plaintiff,<br><br>v.<br><br>Andrew Saul, Commissioner of Social Security,<br><br>                    Defendant. | Civil No. 3:19-cv-01174-TOF<br><br><br><br><br><br>November 30, 2020 |

### RULING ON PENDING MOTIONS

The Plaintiff, Aquilino Collazo, appeals the final decision of the Defendant, Andrew Saul, Commissioner of Social Security ("the Commissioner"), on his application for Title II Social Security Disability Insurance benefits.  This appeal is brought pursuant to 42 U.S.C. § 405(g).  Currently pending are the Plaintiff's motion to reverse and remand for an award and calculation of benefits, or in the alternative, for an order reversing and remanding for a new hearing (ECF No. 13) and the Defendant's motion to affirm the decision of the Commissioner.  (ECF No. 17.)  For the reasons explained below, the Plaintiff's motion to reverse with an order for an award and calculation of benefits is **DENIED**, but his alternative motion to reverse and remand for a new hearing is **GRANTED**.  The Commissioner's motion to affirm is **DENIED**.  The Commissioner's decision is **VACATED** and **REMANDED** for proceedings consistent with this decision.

The Plaintiff raises several arguments on appeal.  The scope of this decision is limited, however, to his arguments arising out of the Administrative Law Judge's ("ALJ") failure to obtain opinions from his treating medical providers.  (ECF No. 13-1, at 11-12.)  The Commissioner argues, in substance, that this failure did not amount to a reversible failure to develop the record.

(ECF No. 17-2, at 6-8.)  The Court agrees with the Plaintiff that, under the facts of this case, the ALJ failed to develop the record by not obtaining treating source opinions.  The Court will therefore remand the case for rehearing, as discussed more fully in Section IV below.

## I.      APPLICABLE LEGAL PRINCIPLES

To be considered disabled under the Social Security Act, "a claimant must establish an 'inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months.'"  *Smith v. Berryhill*, 740 F. App'x 721, 722 (2d Cir. 2018) (summary order) (quoting 20 C.F.R. § 404.1505(a)).  To determine whether a claimant is disabled, the ALJ follows a familiar five-step evaluation process.

At Step One, the ALJ determines "whether the claimant is currently engaged in substantial gainful activity . . . ."  *McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (citing *Burgess v. Astrue*, 537 F.3d 117, 120 (2d Cir. 2008)).  At Step Two, the ALJ analyzes "whether the claimant has a severe impairment or combination of impairments . . . ."  *Id.*  At Step Three, the ALJ evaluates whether the claimant's disability "meets or equals the severity" of one of the specified impairments listed in the regulations.  *Id.*  At Step Four, the ALJ uses a "residual functional capacity" assessment to determine whether the claimant can perform any of her "past relevant work . . . ."  *Id.*  At Step Five, the ALJ assesses "whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience."  *Id.*  The claimant bears the burden of proving her case at Steps One through Four.  *Id.*  At Step Five, "the burden shift[s] to the Commissioner to show there is other work that [the claimant] can perform."  *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 445 (2d Cir. 2012) (per curiam).

In reviewing a final decision of the Commissioner, this Court "perform[s] an appellate function." *Zambrana v. Califano*, 651 F.2d 842, 844 (2d Cir. 1981). The Court's role is to determine whether the Commissioner's decision is supported by substantial evidence and free from legal error. "A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by substantial evidence or if the decision is based on legal error." *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000) (internal quotation marks omitted). The decision is supported by substantial evidence if a "reasonable mind" could look at the record and make the same determination as the Commissioner. *See Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (defining substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion . . ." (internal citations omitted)). Though the standard is deferential, "[s]ubstantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009) (internal quotation marks and citations omitted). When the decision is supported by substantial evidence, the Court defers to the Commissioner's judgment. "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [this Court] will not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002).

The Commissioner's conclusions of law are not entitled to the same deference. The Court does not defer to the Commissioner's decision "[w]here an error of law has been made that might have affected the disposition of the case." *Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004) (internal quotation marks omitted). "Even if the Commissioner's decision is supported by substantial evidence, legal error alone can be enough to overturn the ALJ's decision." *Ellington*

*v. Astrue*, 641 F. Supp. 2d 322, 328 (S.D.N.Y. 2009) (citing *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987)).

If a decision is reversed because it contains legal error or is not supported by substantial evidence, the Court may "either remand for a new hearing or remand for the limited purpose of calculating benefits." *Henningsen v. Comm'r of Soc. Sec. Admin.*, 111 F. Supp. 3d 250, 263 (E.D.N.Y. 2015) (internal quotation marks omitted); *see also Tejada v. Apfel*, 167 F.3d 770, 776 (2d Cir. 1999) (remanding for rehearing but directing Commissioner "to calculate and dispense SSI benefits" if he could not bear his burden at Step Five). Remand for calculation of benefits is not appropriate when the record requires further development. "In deciding whether a remand is the proper remedy, we have stated that where the administrative record contains gaps, remand to the Commissioner for further development of the evidence is appropriate." *Butts v. Barnhart*, 388 F.3d 377, 385 (2d Cir. 2004), *as amended on reh'g in part*, 416 F.3d 101 (2d Cir. 2005). To award benefits, a district court must find that, irrespective of the legal error, the record contains "persuasive proof" of the claimant's disability and "a remand for further evidentiary proceedings would serve no purpose." *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980). A record contains "persuasive proof" of disability when there is "no apparent basis to conclude" that additional evidence "might support the Commissioner's decision." *Rosa v. Callahan,* 168 F.3d 72, 83 (2d Cir. 1999).

## II.   BACKGROUND

### A.  Facts and Procedural History

On January 11, 2017, the Plaintiff applied for disability insurance benefits. (R. 93.) He alleged a disability onset date of June 14, 2016 (R. 199), and claimed that he could not work because of herniated discs, bulging discs, and "numbness/tingling of legs." (R. 83.) The Social

Security Administration ("SSA") denied his application and subsequent request for reconsideration.  (R. 92, 105.)  The Plaintiff then requested a hearing before an ALJ.  (R. 108.)

The Plaintiff's matter was heard by ALJ Matthew Kuperstein on April 24, 2018.  (R. 30.) The ALJ delivered an unfavorable decision on July 5, 2018.  (R. 24.)  The Plaintiff then submitted an appeal to the Appeals Council.  (R. 183.)  The Appeals Council affirmed the ALJ's decision (R. 1-3) and the Plaintiff timely appealed to this Court.  He filed a motion to reverse and/or remand on November 26, 2019.  (ECF No. 13.)  The Commissioner filed his motion to affirm on March 6, 2020.  (ECF No. 17.)  Other background facts, including elements of the Plaintiff's medical history, will be set forth below as necessary to explain the Court's decision.

### B. The ALJ's Decision

At Step One, the ALJ found that the claimant has not engaged in substantial gainful activity since the alleged onset date of June 14, 2016.  (R. 18.)  At Step Two, the ALJ found that the Plaintiff suffered from the severe impairment of a spine disorder.  (*Id*.)  The ALJ also found that the Plaintiff's bilateral knee and bilateral foot pain were not "independent severe impairments" or "related to any other medically determinable impairment."  (*Id*.)  At Step Three, the ALJ found that the Plaintiff's impairments or combination of impairments did not meet or equal a listed disability enumerated in 20 C.F.R. § 404, Subpart P., App. 1.  (*Id*.)  Next, the ALJ determined that the Plaintiff retained the following residual functional capacity:

> [T]o perform sedentary work as defined in 20 CFR 404.1567(a).  The claimant has further limitation to only climbing of ramps or stairs, balancing, stooping, kneeling crouching, or crawling.  The claimant cannot climb ladders, ropes or scaffolds.

(R. 19, 19-22.)[1]

---

[1]    It appears the ALJ made a scrivener's error in the RFC recitation.  Based upon the opinions of the non-examining state agency consultants and the questions posed to the vocational expert, it appears the word "occasionally" was omitted from the functional limitations of climbing or ramps,

At Step Four, the ALJ Found that the Plaintiff cannot perform his past relevant work as a forklift driver or tractor-trailer truck driver.  (R. 22.)  Finally, at Step Five, the ALJ relied on the testimony of a vocational expert to find that there are jobs that exist in the national economy that the Plaintiff can perform, including addressing clerk, call out operator, and telephone solicitor.  (R. 23-24.)  Accordingly, the ALJ determined that the Plaintiff was not disabled from the alleged onset date of June 14, 2016.  (R. 24.)

## III.   <u>DISCUSSION</u>

The Plaintiff argues that the ALJ erred by: (1) minimizing his impairments and "cherry-picking" evidence to support the proposition that he is "not credible in any of his complaints of pain" (ECF No. 13-1, at 7-10); (2) relying "exclusively" on the opinion of a non-examining state agency reviewer, Dr. Henry Scovern; (*id.* at 10-11, 17); (3) failing to obtain "actual, reliable opinion evidence" from his treating providers (*id.* at 11-12); (4) failing to make specific findings as to his pain and other symptoms (*id.* at 12-16); (5) failing to consider his diagnosis of Lupus at Step Two and "in combination with the pain caused by his lumbar dysfunction" (*id.* at 16 n. 1); and (6) formulating an incorrect and unsupported RFC.  (*Id.* at 17-18.)  For the following reasons, the Court finds that under the facts of this case, the ALJ erred by not obtaining medical source opinions from the Plaintiff's treating providers.  The Court therefore reverses and remands the Commissioner's decision without addressing the remaining arguments.

---

stairs, balancing, stooping, kneeling, crouching or crawling.  (R. 74-76, 102-103.)  There are other typographical errors in the ALJ's decision, such as there being "2,000" telephone solicitor jobs in the national economy (R. 23), when the vocational expert testified to there being 200,000 such jobs. (R. 74-75.)

A.      **Under the Circumstances of This Case, the ALJ's Failure to Obtain Treating Source Opinions Was Error**

Where, as here, the claimant filed his claim before March 20, 2017, the Social Security regulations ordinarily obliged the Commissioner to obtain opinion evidence from a claimant's treating providers.  "Indeed, the plain text of the regulation [in force before March 20, 2017] does not appear to be conditional or hortatory: it states that the Commissioner '*will* request a medical source statement' containing an opinion regarding the claimant's residual capacity."  *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33 (2d Cir. 2013) (summary order) (citing 20 C.F.R. §§ 404.1513(b)(6), 416.913(b)(6)) (emphasis in original).

Even so, failure to obtain opinion evidence from the claimant's treating providers does not necessarily invalidate the ALJ's decision.  When the record "contains sufficient evidence from which an ALJ can assess the petitioner's residual functional capacity," *id.* at 34, the failure to obtain medical source opinion evidence is not "*per se* error."  *Sanchez v. Colvin*, No. 13-CIV-6303 (PAE), 2015 WL 736102, at *5 (S.D.N.Y. Feb. 20, 2015); *see also Sinclair v. Saul*, No. 3:18-CV-00656 (RMS), 2019 WL 3284793, at *7 (D. Conn. July 22, 2019) (same).  Stated differently, when the ALJ possesses an "extensive medical record," the lack of medical opinion evidence does not automatically create an obvious gap in the record that "necessitate[s] remand."  *Swiantek v. Comm'r of Soc. Sec.*, 588 F. App'x 82, 84 (2d Cir. 2015) (summary order).[2]

A medical record that lacks a treating source opinion can nevertheless be "sufficient" when its other evidence permits an assessment of the claimant's impairments and residual functional capacity.  "The critical point" is that the claimant's medical records must contain "the sorts of nuanced descriptions and assessments that would permit an outside reviewer to thoughtfully

---

[2]      Additionally, an ALJ's "conclusions would not be defective" when she requests opinions from a claimant's treating providers and those sources "refused."  *Tankisi*, 521 F. App'x at 33-34.

consider the extent and nature" of her impairments and "their impact on her RFC." *Sanchez*, 2015 WL 736102 at *8. When the medical records discuss only the claimant's illnesses and how to treat them, without offering "insight into how her impairments affect or do not affect her ability to work, or her ability to undertake her activities of everyday life," the ALJ's duty to request a medical source statement is ordinarily triggered. *Guillen v. Berryhill*, 697 F. App'x 107, 109 (2d Cir. 2017) (summary order).

The Commissioner does not dispute that the ALJ did not obtain opinions about the Plaintiff's functional capabilities from any of his treating providers. Thus, the question presented here is whether the record otherwise contains evidence "sufficient" to excuse the absence of those opinions. In other words, the Court must assess "whether, given the specific facts of this case, the administrative record before the ALJ . . . although lacking the opinion of [a] treating physician, was sufficiently comprehensive to permit an informed finding by the ALJ." *Sanchez*, 2015 WL 736102, at *6 (internal quotation marks omitted). This question "focuses on circumstances of the particular case, the comprehensiveness of the administrative record, and, at core, whether an ALJ could reach an informed decision based on the record." *Id.* at *5 (citing *Tankisi*, 521 F. App'x. at 33); *see also Moreau v. Berryhill*, No. 3:17-CV-00396 (JCH), 2018 WL 1316197, at *7 (D. Conn. Mar. 14, 2018) (same).

In this case, the Plaintiff argues that the ALJ did not have "actual, reliable opinion evidence on which to rely." (ECF No. 13-1 at 11.)[3] He claims that the "treatment notes presently in the

---

[3]    The Plaintiff's argument is premised, at least in part, on his earlier claim that the opinions of non-examining consultant, Dr. Scovern, are inadequate. (ECF No. 13-1, at 10-11.) Specifically, the Plaintiff argues that Dr. Scovern's conclusions were "not supported by the medical evidence of record" and that he "has no experience in evaluating complex pain cases . . . ." (*Id*. at 11). Because the Court is remanding for failure to develop the record, the Court will not reach the merits of these claims. As will be discussed below, however, the underlying medical records do

record are not sufficient to formulate a complete RFC." (*Id*.)  Therefore, the Plaintiff argues, the ALJ should have requested RFC opinions from his treating providers. (*Id*.)  As noted, the Commissioner does not dispute that the ALJ failed to obtain opinions from the Plaintiff's medical providers, but instead argues that the ALJ had "sufficient evidence . . . to determine that the Plaintiff was not disabled, including treatment notes from several providers." (ECF No. 17-2 at 7-8.)  The Commissioner also argues that the ALJ properly relied on the opinions of two non-examining state agency consultants.  (*Id*. at 7.)  The Court agrees with the Plaintiff that, under the facts of this case, the ALJ should have sought opinions from his treating providers.

As applied to this case, the legal principles in *Tankisi* and *Guillen* support the Plaintiff's argument that the ALJ was required to obtain opinion evidence from his treating providers. The ALJ's decision does not explain "how the evidence supports" his RFC determination, nor does it contain a "discussion of Plaintiff's ability to maintain sustained work activity."  *Reynolds v. Comm'r of Soc. Sec.*, No. 12-CV-1167S (WMS), 2019 WL 2020999, at *6 (W.D.N.Y. May 9, 2019).  Instead, the decision states the RFC determination was reached by "consider[ing] the [Plaintiff's] impairments individually and in combination." (R. 19-22, 22.)  Additionally, the ALJ placed "significant weight" upon the opinions of the non-examining state agency consultants, who concluded that the Plaintiff "could perform a modified range of sedentary work . . . ."  (R. 22).[4] There is no evidence in the record that the ALJ attempted to obtain any medical opinions in connection with the RFC determination.  The "specific facts of this case" do not support the

---

not permit the functional capacity determinations of non-consulting state agency physicians, such as Dr. Scovern, to substitute for the opinions of the Plaintiff's treating physicians.

[4]     The majority of the ALJ's decision relates to his assessment of the Plaintiff's subjective reports of pain and other symptoms.  (R. 19-22.) In doing so, the ALJ relied upon the opinions of non-examining state agency consultant, Dr. Henry Scovern, to find that the Plaintiff's "complaints of pain and having a greater degree of pain and limitation [we]re not supported by the objective evidence of record."  (R. 22.)

conclusion that the administrative record—including the medical records, non-examining opinions and activities of daily living—was "sufficiently comprehensive to permit an informed finding by the ALJ." *Sanchez*, 2015 WL 736102, at *6 (internal quotation marks omitted).

### 1.   Medical Records

The records of the plaintiff's physical maladies are not "voluminous." *Tankisi*, 521 F. App'x at 34.  The administrative record totals 774 pages, and only about 450 of those pages are medical records.  (R. 320-774.)  Moreover, as noted by the ALJ, "there are numerous duplicate records contained in the [Plaintiff's] file"  (R. 20), with at least half of the pages contained in Exhibits 1F-14F consisting of duplicate records or non-medical documents related to claim administration.  (*See*, *e.g.*, R. 334-385, 476-529, 547-596 (triplicate copies of orthopedic records).)  Therefore, even if the record could be characterized as "extensive" on a "superficial level," *Holt v. Colvin*, No. 3:16-CV-01971 (VLB), 2018 WL 1293095, at *7 (D. Conn. Mar. 13, 2018), only a small portion of the record contains substantive medical data related to the Plaintiff's physical impairments.  This distinction is significant because the "real import lies in *what* those . . . pages say, not the mere fact the records exist*." Id*.  (emphasis in original); *compare Duffy v. Comm'r of Soc. Sec.*, No. 17-CV-3560 (GHW) (RWL), 2018 WL 4376414, at *10 (S.D.N.Y. Aug. 24, 2018), *rep. and recommendation adopted,* No. 1:17-CV-3560 (GHW), 2018 WL 4373997 (S.D.N.Y. Sept. 13, 2018) ("At four hundred and forty five pages, the record is relatively scant, and there is nothing in the treating notes setting forth Duffy's ability to function in a work setting.") *with Sena v. Berryhill*, No. 3:17-CV-0912 (MPS), 2018 WL 3854771, at *14 (D. Conn. Aug. 14, 2018) (lack of opinion from treating physician excused because 1,432-page record otherwise contained "ample information upon which to base the RFC determination").

Even more important than the page count is the fact that the Plaintiff's medical records do not illuminate how his physical impairments affect his "ability to work, or [his] ability to undertake [his] activities of everyday life." *Guillen*, 697 F. App'x at 109. Take, for example, the medical records from Orthopaedic & Sports Medicine Center ("OSM").[5] The Plaintiff began treatment with OSM on June 20, 2016 for neck and back injuries he sustained in a motor vehicle accident the week before. (R. 334.) His providers recorded his high levels of pain (*see, e.g.,* R. 338, 340, 345, 347, 349, 352, 380, 382); the results of physical examinations (*see, e.g.,* R. 341, 345-346, 348, 354, 360, 369); and the various treatments that he received, including epidural injections (R. 343), chiropractic treatments (R. 353-85), muscle relaxant and pain medications (*see, e.g.,* R. 338, 341-42, 345-46), and physical therapy[6] (R. 348). The OSM providers also ordered and reviewed an MRI of his lumbosacral spine (R. 341-42, 365), x-rays of his cervical spine (R. 335-37), and x-rays of his lumbar spine. (R. 348.) The majority of these records contain only "raw medical data," with no assessments of the Plaintiff's functional limitations. *See Dowling v. Saul*, No. 3:19-CV-01170 (WIG), 2020 WL 2079113, at *6-7 (D. Conn. Apr. 30, 2020) (finding that "medication notes, diagnosis, examination findings, electronic imaging, [and] Plaintiff's reports of pain" are "raw medical data and/or bare medical findings" that the ALJ is not qualified to assess without a treating provider's opinion). For example, while the OSM notes indicate that he has problems sitting, standing, and walking (R. 345), activities "which are necessary . . . . for sedentary work." *Martin v. Berryhill*, No. 16-CV-6184 (FPG), 2017 WL 1313837, at *3 (W.D.N.Y. Apr. 10, 2017),

---

[5]     In addition to the OSM records, there were additional medical records from Dr. Pardeep Sood and Pain & Spine Specialists of Connecticut (R. 628-694, 725-754), PCA Pain Care (R. 755-774), Physical Therapy & Rehabilitation Services (R. 386-416), Dr. Linette Rosario-Tejada at Bridgeport Medicine (R. 417-427) and Yale New Haven Hospital (R. 697-724).

[6]     The Plaintiff received his prescribed course of physical therapy from Physical Therapy & Rehabilitation Services. (R. 386-416.) Notably, the Plaintiff reported that his pain was aggravated by sitting, standing, walking, bending and lying down. (*See*, *e.g.*, R. 387, 389, 392.)

they do not say for how long he can sit, stand, and walk.[7]   While an ALJ "permissibly can render a common sense judgment about functional capacity even without a physician's assessment" in cases where the claimant only alleges minor physical impairments, *id.*, this is not such a case.  The ALJ found that the Plaintiff's spine disorder is a "severe impairment" (R. 18) and, furthermore, much of the ALJ's decision appears to be based on the technical results of diagnostic studies and physical examinations.  (R. 20-22.)  Because of these facts, the ALJ could not reasonably render a "common-sense" judgment in the absence of a medical opinion.

Based on this Court's review of the record, the only medical record that explicitly addresses the Plaintiff's ability to work is a note from the Plaintiff's visit to Dr. Isaac Cohen, one of his orthopedists at OSM.  On July 19, 2016, Dr. Cohen wrote that the Plaintiff was "capable of light work with lifting no more than ten pounds" (R. 331) and told him that he would "not be given any more work notes." (R. 350.)  The ALJ cited to this evaluation twice in his decision.  (R. 20-21.) However, a physician's "[g]ratuitous commentary" that a claimant can "return to 'light duty' or even 'sedentary work'" does not establish the "various exertional categories of work at issue in social security residual functional capacity assessments." *Oakley v. Colvin*, No. 3:13-CV-679 (GLS/ESH), 2015 WL 1097388, at *11 n.22 (N.D.N.Y. Mar. 11, 2015); *see also Greenhaus v.*

---

[7]      The records from the Plaintiffs other providers likewise fail to provide the requisite nuanced descriptions and assessments of his functional abilities.  For example, the records from Dr. Sood contain similar evaluations, reports of the Plaintiff's symptoms, and commentary as the OSM records.  (R. 650-652, 658-660, 737-739.)  Dr. Sood also issued "work slips" for the Plaintiff. One is dated November 16, 2016 and permits the Plaintiff to return to work (R. 532), and another is dated November 21, 2016, which states the Plaintiff cannot work "until further notice" due to "total temporary disability."  (R. 531.)

Although the ALJ determined that the pain management records were not "probative of the [Plaintiff's] actual level of functioning," the Court has nevertheless reviewed them.  Because this matter is being remanded for failure to develop the record, the Court will not determine whether the ALJ properly discounted the "probative value" of these records.

*Berryhill*, No. 16-CIV.-10035 (RWL), 2018 WL 1626347, at *11 (S.D.N.Y. Mar. 30, 2018) (finding that a physician's "general conclusory statements" that the plaintiff was unable to work did not provide a sufficient basis to evaluate disability under Social Security Act).

The lack of substantive records about the Plaintiff's functional limitations is particularly apparent when one considers exactly what the ALJ's RFC determination entails.    While "sedentary" work is the least stressful of the SSA's five exertional levels, 20 C.F.R. § 404.1567, it is not entirely devoid of meaning.  In concluding that the Plaintiff could perform "sedentary" work, the ALJ concluded by implication that he could lift up to ten pounds, *see* 20 C.F.R. § 404.1567(a), and could sit for "6 hours of an 8-hour workday."  Social Security Ruling 96-9p, 1996 WL 374185, at *7 (July 2, 1996).  None of the Plaintiff's treating providers made any such assessment, nor is such information contained in the medical records.  *See Munoz Robles v. Saul*, No. 3:19-cv-01329 (TOF), 2020 WL 5405877, at * (D. Conn. Sept. 9, 2020) ("To find that the Plaintiff was capable of the 'full range of sedentary work' without limitation, the ALJ needed a sufficient basis for concluding that . . . [the Plaintiff] could lift up to ten pounds and stand and walk for up to two hours in an eight-hour shift"); *Cote v. Berryhill*, No. 3:17-CV-095 (WWE), 2018 WL 1225543, at *4  (D. Conn. Mar. 9, 2018) ("Although the medical record is lengthy, plaintiff's capacity to engage in light work employment is not resolved by the treatment notes."); *Blackert v. Berryhill*, No. 3:16-CV-1327 (JCH), 2017 WL 3168580, at *6 (D. Conn. July 26, 2017) (holding that, in the in the absence of a treating physician opinion, the record did not contain substantial evidence that the plaintiff could satisfy lifting requirements of "medium work").  Here, the only evidence directly related to the Plaintiff's functional ability to sit is his testimony during the benefits hearing. He testified that he if he sits for more than an hour, he legs become numb, and he needs to stand up for five to ten minutes and then walk around for a few more minutes before he can sit down

again.  (R. 52, 61.)  He also stated that he could not spend more than "maybe a couple hours" total sitting on a regular chair throughout the day, and if he does so, he needs to recline or lay down to recover.  (R. 62.)  The ALJ did not discuss this portion of the Plaintiff's testimony in his decision and, even if he had, the testimony is not sufficient to establish that the Plaintiff is capable for sitting for six hours of an eight-hour workday.

The Court notes that the majority of the ALJ's decision is focused on the apparent difference between the results of physical examinations and diagnostic imaging as compared to the Plaintiff's complaints of severe pain and functional limitation.  (R. 20-22.)  The ALJ placed special emphasis on the portions of the record which implied that the Plaintiff's pain was out of proportion to the objective medical findings.  For example,  Dr. Gerard Girasole wrote that the Plaintiff's symptoms "far exceed the findings on his x-rays," his "symptoms are more pronounced" than would be expected based on his MRI results, and that his report of pain radiating to his back was "not truly consistent" with the results of a physical examination.  (R. 348.)  Similarly, PA-C Ronaldo Lopez indicated that neither the "MRI findings" nor Dr. Girasole's examination provided an "explanation for the severity of his symptoms." (R. 351.)  PA-C Lopez concluded that "there is nothing from an orthopedic perspective that explains the severity of his symptoms" and referred the Plaintiff to a neurologist and for pain management.  (R. 352.)  The ALJ concluded that the fact that the Plaintiff's orthopedic providers "repeatedly told [him] that there was no objective basis for the level of pain he alleged" reflected negatively on the Plaintiff's subjective findings of pain. (R. 22.)  In other words, the ALJ believed that the inconsistency between the medical testing and the Plaintiff's claims of pain compromised the Plaintiff's credibility.  The credibility findings of an ALJ "are entitled to great deference and therefore can be reversed only if they are patently unreasonable." *Pietrunti v. Dir., Office of Workers' Comp. Programs*, 119 F.3d 1035, 1042 (2d

Cir. 1997) (internal quotation marks omitted).  However, the ALJ's assessment of the Plaintiff's credibility is only entitled to deference if it was based on a fully developed record.  *See Rosa*, 168 F.3d at 82 n.7 (refusing to assess the ALJ's credibility determination when the ALJ failed to develop the record); *Figueroa v. Saul*, No. 18-CV-4534 (JLC), 2019 WL 4740619, at *31 (S.D.N.Y. Sept. 27, 2019) ("[W]ithout a fully developed record, a reviewing court cannot conclude whether substantial evidence supported the ALJ's credibility finding.").  Regardless of whether the Plaintiff's claims were credible, the ALJ had an obligation to develop the record and obtain medical opinion evidence.  Accordingly, the Court concludes that in the absence of functional assessments by the Plaintiff's treating providers, his medical records are not "sufficiently comprehensive to permit an informed finding by the ALJ."  *Sanchez*, 2015 WL 736102, at *6 (internal quotation marks omitted).

### 2.    Non-Examining State Agency Consultants

When the record "do[es] not shed any light" on a claimant's RFC, the opinion of a non-examining state agency consultant is ordinarily not a sufficient substitute for the opinion of the claimant's treating provider.  *Guillen*, 697 F. App'x. at 108-09 (remand required where "the medical records obtained by the ALJ [did] not shed any light on Guillen's residual functional capacity, and the consulting doctors did not personally evaluate Guillen"); *see also Card v. Berryhill*, No. 3:18-CV-1060 (AWT), 2019 WL 4438322, at *4 (D. Conn. Sept. 16, 2019) (same). Stated differently, opinions by non-examining consultants cannot fill the gap created by the absence of treating physician opinions when the medical records "do[] not provide a sufficient basis" to determine a claimant's RFC.  *Borelli v. Berryhill*, No. 3:18-CV-0801 (VLB), 2019 WL 4233586, at *13 (D. Conn. Sept. 6, 2019).  Courts have held that "[r]emand is . . . necessary" under

these circumstances. *Martinez v. Berryhill*, No. 3:17-CV-0843 (SRU), 2019 WL 1199393, at *11 (D. Conn. Mar. 14, 2019).

In this case, the ALJ placed "great weight" on the opinions of non-examining state agency physicians to support his RFC determination. (R. 22.) Yet the underlying medical records did not "shed any light" on the Plaintiff's functional and work-related limitations. *Guillen*, 697 F. App'x. at 108-09. Therefore, these opinions do not constitute "sufficient evidence from which an ALJ can assess the [Plaintiff's] residual functional capacity." *Tankisi*, 521 F. App'x at 34; *see Dowling*, 2020 WL 2079113, at *5 ("The ALJ's reliance on the assessment by the State Agency physicians is problematic because there is *no* medical opinion from a treating physician and/or specialist addressing the functional limitations that flow from Plaintiff's physical impairments to support the ALJ's physical RFC findings."); *Byrne v. Berryhill*, No. 3:19-CV-0066 (RAR), 2020 WL 373076, at *4 (D. Conn. Jan. 23, 2020) (same); *Card*, 2019 WL 4438322, at *4 (remanding where medical records did not shed light into RFC and ALJ "only refers to the opinions of nonexamining state agency physicians"); *Alamo v. Berryhill*, No. 3:18-CV-00210 (JCH), 2019 WL 4164759, at *6–8 (D. Conn. Sept. 3, 2019) (finding that ALJ failed to develop the record by not obtaining treating physician opinion "notwithstanding" opinions by examining and non-examining consultants and further, that medical records and consulting opinions were insufficient to support "light work" determination).

### 3.      Activities of Daily Living

In formulating an RFC, the ALJ is of course entitled to consider "descriptions and observations" made by a claimant about his own limitations. 20 C.F.R. § 404.1545(a)(3). Reports of these daily activities, however, must "offer insight on how plaintiff's impairments affect her ability to work and undertake activities of daily life." *Compare Keovilay v. Berryhill*, No. 3:19-

CV-0735 (RAR), 2020 WL 3989567, at *4-5 (D. Conn. July 15, 2020) (affirming ALJ's RFC determination, which was based on opinions by examining and non-examining consultants as well as Plaintiff's statements that she "walks her dog for up to an hour in the morning and an hour at night, walks three to four times a week, performed household chores, and cared for her boyfriend's disabled mother") *with Newton v. Berryhill*, No. 3:18-CV-1244 (MPS), , at *4 (D. Conn. Sept. 26, 2019) (finding that plaintiff's activities of "self-care," trying to "help out with his grandson," driving his "grandson to work a few times a week," and "prepar[ing] light meals, sweep[ing], and go[ing] for short walks" did not "constitute substantial evidence that his functional abilities are in excess of those alleged, and in any event do not support specific findings that he can" engage in light work) *and Blackert*, 2017 WL 3168580, at *7 (finding that "a trip to Florida, going out to dinner, going camping with her boyfriend once, exercising, and completing chores" was of "little probative value without knowing more details about the activities" because "while these activities may indicate that [the plaintiff] is capable of some degree of physical exertion, they say almost nothing about her capacity to perform medium work").

In this case, the ALJ did not clearly state that the RFC determination incorporated the Plaintiff's activities of daily living.  The decision briefly summarizes the Plaintiff's testimony about his activities, such as driving once a week, taking a trip to Puerto Rico,[8] and spending "22 hours a day in bed lying down" and pass[ing] the time by watching television or You Tube and playing games on his phone." (R. 19.)  To the extent the ALJ relied upon such evidence, the Court concludes that the Plaintiff's activities of daily living do not fill the evidentiary gap created by the lack of treating source opinions.  Without additional information, the referenced daily activities

---

[8]     The Plaintiff testified that he went to Puerto Rico in 2017 for two weeks to be with his ailing father.  (R. 59.)

did not sufficiently support the RFC determination.  In this respect, the activities of daily living cited by the ALJ are similar those at issue in *Newton* and *Blackert* – they do not speak to the Plaintiff's capacity to perform "sedentary work" or the functional limitations caused by his physical impairments.

### 4.       Conclusion

Accordingly, the Court concludes that the Plaintiff's medical records, activities of daily living and the opinions by the non-examining state agency consultants do not constitute "sufficient evidence from which" the ALJ could determine his RFC such that opinions from his treating providers were unnecessary.  *Tankisi*, 521 F. App'x at 34.  Remand is therefore warranted.  *See Dowling*, 2020 WL 2079113, at *7 ("Because there is <u>no</u> medical source opinion or functional assessment supporting the ALJ's finding that [the claimant] can perform light work with limitations, the Court concludes that the RFC determination is without substantial support in the record and a remand for further administrative proceedings is appropriate."); *Delgado v. Berryhill*, No. 3:17-CV-0054 (JCH), 2018 WL 1316198, at *7-10 (D. Conn. Mar. 14, 2018) (same).

The ALJ "should develop the record as necessary to obtain opinions as to the Plaintiff's functional limitations from [his] treating and/or examining sources, obtain a consultative physical examination and/or a medical expert review, and/or obtain a functional capacity evaluation, and thoroughly explain his findings in accordance with the regulations."  *Dowling*, 2020 WL 2079113, at *7; *see also Martin,* 2017 WL 1313837, at *4 ("There were many avenues available to the ALJ to fill the gap . . . .").  The Commissioner on remand "should employ whichever of these methods are appropriate to fully develop the record as to [the Plaintiff's] RFC."  *Dowling*, 2020 WL 2079113, at *7.

### B.    Remaining Arguments

Because the Court is remanding this matter for further development of the record, it does not reach the Plaintiff's remaining arguments.  "The issue of whether an ALJ has satisfied his obligation to develop the record is one that must be addressed as a threshold issue." *Camarota v. Comm'r of Soc. Sec.*, No. 3:19-CV-0133 (RMS), 2020 WL 132437, at *5 (D. Conn. Jan. 13, 2020) (internal quotation marks omitted).  The Court declines to address the Plaintiff's remaining arguments because "upon remand and after a *de novo* hearing, [the ALJ] shall review this matter in its entirety." *Faussett v. Saul*, No. 3:18-CV-738 (MPS), 2020 WL 57537, at *5 (D. Conn. Jan. 6, 2020) (internal quotation marks omitted); *see also Delgado*, 2018 WL 1316198, at *19 (holding that because the case is "already being remanded for other reasons," and "because [the Plaintiff's] RFC may change after full development of the record," the ALJ is likely required to reconsider the other steps in the five-step analysis).

On remand, and after further development of the record and a new hearing, the ALJ shall consider the other claims of error not discussed in this decision.  *Pacheco v. Saul*, No. 3:19-CV-00987 (WIG), 2020 WL 113702, at *8 (D. Conn. Jan. 10, 2020) ("On remand, the Commissioner will address the other claims of error not discussed herein."); *see also Moreau*, 2018 WL 1316197, at *4 ("Because the court finds that the ALJ failed to develop the record, it also suggests that the ALJ revisit the other issues on remand, without finding it necessary to reach whether such arguments would themselves constitute legal error justifying remand on their own.").

## IV.    <u>CONCLUSION</u>

If a decision is reversed because it contains legal error or is not supported by substantial evidence, the Court may "remand for a new hearing or remand for the limited purpose of calculating benefits." *Henningsen*, 111 F. Supp. 3d at 263 (internal quotation marks omitted).

However, remand for calculation of benefits is not appropriate when the record requires further development. "In deciding whether a remand is the proper remedy, [the Second Circuit has] stated that where the administrative record contains gaps, remand to the Commissioner for further development of the evidence is appropriate." *Butts*, 388 F.3d at 385. In this case, the Court has determined that the matter should be remanded to the Commissioner for further development of the record. Therefore, an order for the calculation of benefits is not appropriate.

For the reasons stated, the Plaintiff's motion to reverse with an order for an award and calculation of benefits is **DENIED**, but his alternative motion to reverse and remand for a new hearing is **GRANTED**. The Commissioner's motion to affirm is **DENIED**. The Commissioner's decision is **VACATED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for proceedings consistent with this decision. In light of the Court's holdings, it need not reach the merits of the Plaintiff's other arguments. Therefore, this matter is remanded to the Commissioner for further administrative proceedings consistent with this opinion. On remand, the Commissioner shall address the other claims of error not discussed herein.

This is not a recommended ruling. The consent of the parties allows this magistrate judge to direct the entry of a judgment of the district court in accordance with the Federal Rules of Civil Procedure. (ECF No. 10.) Appeals can be made directly to the appropriate United States Court of Appeals from this judgment. *See* 28 U.S.C. § 636(c)(3); Fed. R. Civ. P. 73(c). The Clerk is directed to enter judgment in favor of the Plaintiff and close this case.

It is so ordered.

*/s/ Thomas O. Farrish*
_____
Hon. Thomas O. Farrish
United States Magistrate Judge
